# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JA'WAYNE HELFFERICH,

     Plaintiff,

v.                                                                    No. 20-cv-1069-JCH-KK

STATE OF NEW MEXICO, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

THIS MATTER is before the Court on Plaintiff Ja'Wayne Helfferich's *pro se* Complaint for Violation of Civil Rights. (Doc. 1) (the "Complaint"). Plaintiff is proceeding *in forma pauperis*. He claims that his Fourteenth Amendment right to due process was violated by state prison officials who deprived him of the opportunity to earn meritorious deductions that could have reduced his sentence. He also claims that the conditions of his confinement violated the Eighth Amendment prohibition of cruel and unusual punishment. These claims arise under 42 U.S.C. Section 1983. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915(e)(2), the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to file an amended complaint.

I.    <u>Background</u>.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes, but does not decide, that the following facts taken from the allegations in the Complaint are true. The

Court also takes notice of the related case, *Helfferich v. Jablonski*, Case no. 18-cv-33-WJ-GBW, in which the Court denied Plaintiff's petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1]

Plaintiff was convicted in state court of multiple sex crimes involving minor children. *Helfferich*, 18-cv-33-WJ-GBW, Doc. 16 at 1. He served a state prison sentence in the custody of the New Mexico Corrections Department ("NMCD") from June 27, 2014, until October 18, 2018. (Doc. 1 at 4). Initially, Plaintiff was housed at Otero County Prison Facility ("Otero"), which is known specifically to house sex offenders.  (Doc. 1 at 4, 11). Because Plaintiff refused to participate in the Sex Offender Treatment Program ("SOTP"), prison officials did not allow him to accrue "earned meritorious deductions"— *i.e.*, good time credits that reduce a prison sentence. (Doc. 1 at 4); *see Helfferich*, 18-cv-33-WJ-GBW, Doc. 16 at 1-2. Plaintiff alleges that the prison officials made this decision knowing that it would lengthen his prison term, which it allegedly did by five months. (Doc. 1 at 4, 11).  He implies that prison officials could not lawfully deprive him of the opportunity to earn meritorious deductions without first issuing a "major misconduct report," yet, he alleges, none was issued. (Doc. 1 at 4).

Plaintiff further alleges that based on his refusal to engage in the SOTP, he was transferred to the Roswell Correctional Facility ("Roswell") where he lived in extreme fear for his life for three months. (Doc. 1 at 4, 11). By transferring him to Roswell, Plaintiff alleges, Defendants intentionally placed him in harm's way. (Doc. 1 at 4). Further, he alleges that the transport itself was dangerous because he and three other Otero inmates were on a bus with inmates from another prison, all of whom knew where the Otero transferees were from. (Doc. 1 at 4, 11). While incarcerated in Roswell, Plaintiff witnessed two convicted sex offenders get violently attacked by

[1] *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly filed records ... and certain other courts concerning matters that bear directly upon the disposition of the case at hand").

other inmates. (Doc. 1 at 11). After witnessing the attacks, Plaintiff and two other Otero transferees sought protective custody which, when granted, apparently led to their being held for three days in small cages without showers or toothbrushes and subject to constant harassment from guards. (Doc. 1 at 11).

Based on the foregoing, Plaintiff seeks to state claims for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 3). Specifically, he claims that he was deprived of due process when Defendants unlawfully denied him the opportunity to accrue good time credits, knowing that doing so would lengthen his prison term. (Doc. 1 at 4). He claims that his right to be free from cruel and unusual punishment was violated when Defendants intentionally placed him in harm's way by transferring him to Roswell where he was subjected to cruel and unusual punishment, leading to emotional distress, anxiety, and depression. He seeks a declaratory judgment that the SOTP policy is unlawful or unconstitutional, a declaratory judgment that his right to due process was violated by his exclusion from eligibility for earned meritorious deductions, a declaratory judgment that the punishments he received violated the Eighth Amendment, and monetary damages of $1200 a day for every day he spent in prison that would have been deducted from his sentence if he had earned meritorious deductions. (Doc. 1 at 5).

In addition to "unknown and unnamed defendants," Plaintiffs claims are against the following identified Defendants: the State of New Mexico, Corrections Department and Representative; Management and Training Corporation; Greg Marcantel, prior Secretary of Corrections; Alisha Tafoya Lucero, Secretary of Corrections; Jerry Roark, Director of Adult Prisons; David Jablonski, prior Acting Secretary of Corrections; Joe W. Booker, Jr., Deputy Secretary of Operations; Paula Burns, prior Bureau Chief; Ebith Cruz-Martinez, prior Contract

Compliance Officer; James Frawner, prior Warden Otero County Prison; Ricardo Martinez, Otero County Prison Warden; classification supervisor Linda Nolasco; and classification officer Veronica Andrade.

II.    Analysis.

A.    Standard of Review.

As Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil action, the Complaint must be screened under 28 U.S.C. § 1915(e)(2). Under § 1915(e)(2), the Court must dismiss a civil action *sua sponte* if the complaint "is frivolous, malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.    Pleading Standards Governing a §1983 Claim.

Plaintiff's claims arise under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. § 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th

Cir. 2000). To plead a viable claim, a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

C.    The Complaint Does Not Satisfy the Pleading Standards.

The allegations in the Complaint are insufficient to satisfy the foregoing standards. Although Plaintiff identifies numerous Defendants, it is not clear how any of them, by their own individual actions, allegedly violated his constitutional rights. If Plaintiff wishes, for brevity, to refer to some defendants collectively—for example, "the heads of the Department of Corrections"; the "department heads of Management Training Corporation," he should clarify who is included in the designation. If Plaintiff does not know the names of alleged wrongdoers, he may refer to "unknown or unnamed" (i.e., Jane/John Doe defendants) but he must describe them with sufficient detail that they could be identified for service of process, *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996), and specify what their *personal* involvement was in the alleged wrongdoing. As pled, the generalized allegations of wrongdoing and harm in the Complaint do not state a viable claim under § 1983. *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff," an "undifferentiated contention that 'defendants' infringed on his rights" does not suffice.); *Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020) (A plaintiff must "do more than show that [his] rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those

violations."). On this basis, alone, the Complaint must be dismissed. If Plaintiff files an amended Complaint against the individual Defendants, he should clearly identify *exactly who* is alleged to have done *specifically what* in contravention of his constitutional rights.

Additionally, for the reasons discussed next, the allegations in the Complaint are factually insufficient to support Plaintiff's Claims.

D.      Plaintiff's Claims Against the State of New Mexico, Its Agencies and Officials.

"It is well established that arms of the state, or state officials acting in their official capacities, are not 'persons' within the meaning of § 1983 and therefore are immune from § 1983 damages suits." *Hull v. State of N.M. Tax'n & Revenue Dept's Motor Vehicle Div.*, 179 F. App'x 445, 446 (10th Cir. 2006) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990), and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Nor can these Defendants be held vicariously liable for the actions of their employees. *Monell v. Dep't of Social. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Plaintiff's claims against the "State of New Mexico, Corrections Department and Representative" and any official capacity claims against the state officials named as Defendants in this action cannot survive and must be dismissed with prejudice.

E.   Plaintiff's Potential Claims Against Management and Training Corporation.

Plaintiff names "Management and Training Corporation" as a Defendant in this action, but the Complaint is devoid of allegations specifically supporting any potential claims against it. To the extent Plaintiff wishes to pursue a claim against this Defendant, he should note that a corporation can be held liable under § 1983 only for its unconstitutional policies and practices. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215-16 (10th Cir. 2003). It cannot be held liable under a theory of respondeat superior for the actions of its individual employees. *Id.* at 1215.

F.   Plaintiff's Fourteenth Amendment Due Process Claims.

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty, or property. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.] *Wilkinson v. Austin*, 545 U.S. 209, 221, (2005) (citations omitted). In the Complaint, the Court perceives two potential due process claims: one premised on Plaintiff's ineligibility to earn meritorious deductions and another based on his transfer to Roswell.

    1.  Earned Meritorious Deductions.

To the extent Plaintiff seeks to state a due process claim on the ground that he was denied the opportunity *to accrue* earned meritorious deductions, the claim is not viable under § 1983.

The United States Constitution does not "guarantee good-time credit for satisfactory behavior while in prison." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). If, however, state law provides a statutory *right* to good time, the state cannot deprive a prisoner of his good time without due process. *Id.* (A state has "the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior"; if the state creates such a right and recognizes "that its deprivation is a sanction authorized for major misconduct" the prisoner's interest in his accrued credits is protected by the Fourteenth Amendment); *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("[D]enying a prisoner *mandatory* earned time credits—*i.e.*, those to which he has some entitlement—would deprive him of a liberty interest if those credits advance his mandatory date of release[.]"). But when the determination of whether to award of good time credits is a matter of an official's discretion, a prisoner "has no constitutionally protected liberty interest in earning [them]" and thus, no right to due process before they are withheld. *Id.*

In New Mexico, earned meritorious deductions are governed NMSA 1978, Section 33-2-34. "To earn meritorious deductions, a prisoner . . . must be an active participant in programs

recommended for the prisoner by the classification supervisor and approved by the warden or the warden's designee." NMSA 1978, § 33-2-34(A). "A prisoner may earn meritorious deductions upon recommendation by the classification supervisor, based on the prisoner's active participation in approved programs"; he "may not earn meritorious deductions unless the recommendation for the classification supervisor is approved by the warden or the warden's designee." NMSA 1978, § 33-2-34(B). "A prisoner is not eligible to earn meritorious deduction if the prisoner . . . is not an active participant in programs recommended and approved for the prisoner by the classification supervisor." NMSA 1978, § 33-2-34(F)(4). The statute does not entitle prisoners to earned meritorious deductions. Instead, it gives prison officials discretion to allow a prisoner to earn them by actively participating in programs recommended and approved for the prisoner.

The allegations in the Complaint clearly indicate that Plaintiff refusal to engage in the SOTP was the reason that prison officials excluded him from eligibility for earned meritorious deductions. As the decision to deny Plaintiff the opportunity to earn meritorious deductions was a matter within the officials' discretion, not a statutory right, Plaintiff did not have a constitutionally protected liberty or property interest in unearned deductions. Accordingly, even if it were properly pled, Plaintiff's due process claim on this ground would be subject to dismissal on its merits. *See Fogle*, 435 F.3d at 1262 (holding that a prisoner's clam that his due process rights were violated when he was denied the opportunity to earn "earned time credits" was properly dismissed as frivolous where credits were discretionarily awarded).

2. Transfer.

To the extent Plaintiff claims that his right to due process was violated because he was transferred from one facility to another without disciplinary process, this claim too, is not viable under § 1983. Prisoners do not have a constitutional right to remain in a particular institution.

*Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir.1990). As such, they are not entitled to due process protections prior to a transfer. *Id.* at 562. Even if it were properly pled, this claim would be subject to dismissal on the merits.

G. <u>Plaintiff's Eighth Amendment Claims</u>.

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). The Court construes the Complaint as raising the following three Eighth Amendment claims.

1. <u>Earned Meritorious Deductions</u>.

Plaintiff appears to claim that by denying him the right to accrue earned meritorious deductions, prison officials violated his right to be free from cruel and unusual punishment. If so, the claim is frivolous. The Eighth Amendment guarantees a prisoner's right to the minimal civilized measure of life's necessities, not the privilege of a reduced sentence. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that a prisoner's Eighth Amendment claim based on "the denial of good time credits and other privileges" was not supported by applicable law); *cf. Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (holding that an Eighth Amendment claim based on a prisoner's allegation that he had to remain in an overcrowded prison "without the benefit of emergency time credits" must fail as it did not amount to "a specific deprivation of a human need").

2. <u>Failure to Protect.</u>

The Court construes Plaintiff's allegations of being fearful and placed in harm's way on

the transportation bus and then in Roswell as seeking to state an Eighth Amendment claim for "failure to protect."

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the inmate must establish that the prison official has a sufficiently culpable state of mind, i.e., that he or she is deliberately indifferent to the inmate's health or safety. The prison official's state of mind is measured by a subjective, rather than an objective, standard. In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation marks and citations omitted).  As pled, the allegations in the Complaint do not satisfy either element.

While the risk of serious harm element does not require "the consummation of threatened injury," conclusory allegations without supporting factual averments showing an objectively sufficiently serious threat do not suffice. *Riddle*, 83 F.3d at 1205–06. In *Riddle*, the Tenth Circuit held that allegations that the "[p]laintiff is . . . constantly in fear of his life by physical assaults from other inmates who may discover his crime as a sex offense at any time" were conclusory and therefore insufficient to satisfy the objective standard. *Accord Casanova v. Ulibarri*, 622 F. App'x 724, 730 (10th Cir. 2015) (citing *Street v. Fair*, 918 F.2d 269, 272 (1st Cir. 1990) for the proposition that complaining in a "conclusory fashion of being afraid and aggravated without detailed specific circumstances" is insufficient to satisfy the objective element). To satisfy the objective element, a prisoner should "identify . . . actual threats or plead facts suggesting that his sex offender status poses a substantial risk of serious harm." *Amin v. Voigtsberger*, 560 F. App'x 780, 784 (10th Cir. 2014). The allegations in the Complaint that Plaintiff lived in extreme fear for his life are like those in *Riddle*. The Complaint does not identify actual threats or plead facts— other than Plaintiff's observation of two convicted sex offenders being attacked—showing that *Plaintiff* was at risk of substantial serious harm.

Even if the allegations in the Complaint were sufficient to satisfy the objective element, however, they fail to satisfy the subjective element.  Plaintiff has not alleged that any official had a sufficiently culpable state of mind—*i.e*, that they had "actual knowledge of the alleged risk to his safety." *Allen v. Zavaras*, 430 F. App'x 709, 713–14 (10th Cir. 2011) (discussing the subjective component of an Eighth Amendment claim brought by a sex offender inmate). Nor does the Complaint allege that such official(s), possessed of the requisite knowledge, remained deliberately indifferent to the risk to Plaintiff's safety.  On the contrary, the allegations demonstrate that officials moved him to protective custody, remediating the danger.

    3.  <u>Conditions of Confinement</u>.

It appears that Plaintiff may also seek to state an Eighth Amendment "conditions of confinement" claim stemming from the first three days of his protective custody. As in a failure to protect claim, a plaintiff seeking to prove that prison conditions amount to cruel and unusual punishment, must satisfy the objective and subjective requirements. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the Tenth Circuit the bar for the objective requirement is set high—particularly when the complained of conditions are limited to a few days. For example, in *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) circuit court stated:

> An inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the "circumstances, nature, and duration" of the challenged conditions must be carefully considered. While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance. For example, a filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months. We have held that a situation involving filthy cells, poor lighting, inadequate ventilation or air cooling, and unappetizing food simply did not rise to the level of a constitutional

> violation where prisoners were exposed to the conditions for only forty-eight hours. In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation[.]

(alterations, internal quotation marks, and citations omitted). Similarly, in *Rascon v. Douglas*, 718 F. App'x 587, 593 (10th Cir. 2017), the court noted that conditions including: "confinement for at least ten days in a small cell with only a cement slab for a bed, no bedding, a light in the cell on at all times, two meals per day, and one shower per week" and being "held for four nights and five days in a stripped basement intake cell with minimal clothing and bedding, no personal hygiene items, and no cleaning supplies for the cell" do not satisfy the objective standard. The allegations in the Complaint that Plaintiff was confined in a four foot by four foot "cage" and deprived of a toothbrush and a shower for three days do not appear to rise to the level of an objectively serious deprivation required to state a claim. Nor does Plaintiff's allegation that he was harassed by guards support an Eighth Amendment claim. *See generally Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("[V]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").

Nor does Plaintiff allege that any named Defendant was both aware of, and deliberately indifferent to, any alleged threat to his health or safety stemming from these conditions.

III.   <u>Plaintiff May File an Amended Complaint.</u>

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

IT IS ORDERED:

(1)     Each of the claims set forth in the complaint (Doc. 1) are DISMISSED without prejudice.

(2)     Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE